**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
        Plaintiff,

  v.                                               Case No. 10-CR-84

**ANTONINA GUTIERREZ**
        Defendant.

---

## SENTENCING MEMORANDUM

Defendant Antonina Gutierrez pleaded guilty to an information charging her with making false statements to the Department of Labor ("DOL") and the Social Security Administration ("SSA") in connection with her receipt of disability benefits. After accepting her pleas, I ordered a pre-sentence report ("PSR") and set the case for sentencing.

In imposing sentence, the district court must first calculate the defendant's advisory sentencing guideline range, then determine the ultimate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See United States v. Panice, 598 F.3d 426, 441 (7th Cir. 2010). This memorandum sets forth my determinations on these issues.

### I. GUIDELINES

Defendant's PSR set a base offense level of 6, U.S.S.G. § 2B1.1(a)(2), added 8 levels based on the "loss" amount, § 2B1.1(b)(1)(E), then subtracted 2 levels for acceptance of responsibility, § 3E1.1, for a final level of 12. The PSR then calculated a criminal history category of I, creating an imprisonment range of 10-16 months. The parties agreed with these calculations, which I found correct and adopted accordingly.

## II. SECTION 3553(a)

**A. Sentencing Factors**

Section 3553(a) provides that the court, in determining the particular sentence to be imposed, shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the [advisory] sentencing [guideline] range[;]

(5) any pertinent policy statement . . . issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute directs the court, after considering these factors, to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Id.

While the guidelines serve as the starting point and initial benchmark, Gall v. United States, 552 U.S. 38, 49 (2007), the district court may not presume that a guideline sentence is the correct one, Nelson v. United States, 129 S. Ct. 890, 892 (2009). Rather, the court must make an independent determination, without any thumb on the scale favoring a guideline sentence, United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007), taking into

2

account the types of sentences available, the relevant § 3553(a) factors, and the arguments of the parties, see Gall, 552 U.S. at 49-50.

**B.      Analysis**

   **1.      The Offense**

On November 18, 1994, defendant injured her back while delivering mail for the United States Postal Service ("USPS"). Following several failed attempts to return to work, in September of 1999 the DOL, which administers the federal workers' compensation program, determined that plaintiff would receive benefits to be paid at 75% of her normal rate of pay, or $1643 per month. In February of 2000, defendant applied for social security disability benefits related to her back injury. The SSA found her eligible in October 2001, with an onset date of June 30, 1999.

As a condition of receiving workers' compensation, the DOL required defendant to annually complete a form advising of any changes in her financial or medical condition. On March 5, 2007, and again in March of 2008 and 2009, defendant falsely denied self-employment, when in fact she began babysitting for pay in July 2006.

In July 2007, the government received a tip that defendant was babysitting in her home, and a postal inspector subsequently conducted surveillance, confirming that defendant watched a child every day during the work week. The inspector also saw defendant sweeping, gardening, and driving her vehicle every day. On October 30, 2008, an undercover SSA agent interviewed defendant, and she stated that she did not work, spent most of her days home alone, and could not perform yard work. As part of the interview, defendant completed an SSA form in which she denied working or receiving money for work, when in fact she had been

3

receiving $500 per week as a babysitter since July 2006.

The SSA agent conducted another interview in August of 2009, and defendant again denied self-employment, including babysitting, and again signed a form under oath attesting to these facts. The agent then revealed that the government had video indicating that she babysat for pay. After an initial denial, defendant admitted the truth, stating that she received $100 per day to watch a child, and that the child's mother usually wrote the check out to defendant's husband. The child's mother confirmed paying defendant $100 per day, and that defendant asked her to make the checks out to defendant's husband because defendant was collecting money for a work-related injury and it would create a conflict if the checks were made out to defendant.

Between July 2006 and August 2009, defendant received $81,801.88 in workers' compensation benefits and $44,669.60 in social security benefits for herself and her two children. The DOL reported that, had she admitted her earnings, defendant would have instead received $34,426.40, creating a loss of $47,375.48 to the USPS. The loss to the SSA was $44,669.60, the entire amount paid.

### 2. The Defendant

At age forty-six, defendant had no prior record and an otherwise positive background. She moved with her family to Milwaukee, Wisconsin from Sicily at age six, learned English, and became a citizen at age nineteen. After dropping out of school to care for a sick relative, she earned a GED, then worked at a grocery store for about eleven years and for the postal service for about five years. Defendant had been married for over ten years, and her husband remained supportive. She had two children from a previous marriage, ages eighteen and sixteen, both of whom lived with defendant and her husband.

4

I received many positive letters attesting to defendant's good character and helpful nature, as well as a defense PSI, which provided additional detail on her background. While the instant offense conduct occurred over an extended period of time, it nevertheless appeared to represent a departure from her otherwise positive character.

Further, despite the circumstances giving rise to these charges, the record demonstrated that defendant's back injury was serious, requiring three surgeries – a lumbar discectomy in 1996 and lumbar fusions in 1997 and 1999. She continued to take strong pain pills on a daily basis, along with medication for anxiety. She survived a suicide attempt in July 2007 brought on by pain and financial problems, which suggested a need for mental health treatment as well.

### 3. The Sentence

The guidelines recommended 10-16 months, and the government advocated a prison sentence at the low end of the range. While I agreed with the government that this was a serious offense, under all the circumstances, I found a "Zone B" sentence served in the community, as defendant suggested, sufficient to satisfy the purposes of sentencing.[1]

First, a sentence served in the community enhanced defendant's ability to make restitution to the USPS and SSA, an important factor in this case under § 3553(a)(7). See, e.g., United States v. Boumenot, No. 09-CR-194, 2010 WL 145848, at *3 (E.D. Wis. Jan. 8, 2010) (finding that a sentence served in the community best satisfied the need to provide

---

[1] Defendant's 10-16 month range fell in Zone C of the grid, permitting a split sentence of ½ prison and ½ home or community confinement. U.S.S.G. § 5C1.1(d). Zone B permits the court to place the defendant on probation and use home or community confinement to satisfy the entire confinement portion of the sentence. U.S.S.G. § 5C1.1(c). Of course, under United States v. Booker, 543 U.S. 220 (2005), the court is not required to stick with the Sentencing Commission's approach. In the present case, however, I found the Commission's Zones helpful.

5

restitution to the victims of the offense under § 3553(a)(7)); United States v. Peterson, 363 F. Supp. 2d 1060, 1062 (E.D. Wis. 2005) (imposing below-guideline sentence in part to facilitate payment of restitution). Further, I could impose a period of probation of up to five years under 18 U.S.C. § 3561(c), while supervised release after a prison sentence would have been capped at three years in this case under 18 U.S.C. § 3583(b). This permitted the court to monitor defendant's behavior and ensure restitution payments for a longer period of time.

Second, based on her lack of any prior record, her serious medical problems, and her otherwise positive background, I saw no need for prison to protect the public. 18 U.S.C. § 3553(a)(2)(C). Similarly, I found that the considerable impact of this prosecution – along with a lengthy period of supervision – sufficed to deter her from committing further crimes. 18 U.S.C. § 3553(a)(2)(B). And her significant medical treatment needs were best addressed in the community. 18 U.S.C. § 3553(a)(2)(D).

Third, defendant did, when confronted, admit her crime, and she agreed to plead guilty to an information. During her allocution, she expressed genuine remorse for her conduct.

Finally, lengthy probation and a period of home confinement sufficed to provide just punishment, promote respect for the law, and deter others.[2] 18 U.S.C. § 3553(a)(2)(A) & (B). I saw no indication that defendant committed these crimes out of greed, in order to live a lavish

---

[2]The government opposed probation, stressing the need for general deterrence. While prison may, as a general matter, produce a stronger deterrent effect than a sentence served in the community, nothing in § 3553(a) requires that the goal of general deterrence be met through a period of incarceration. United States v. Edwards, 595 F.3d 1004, 1016 (9th Cir. 2010). Nor is it the case that probation invariably depreciates the seriousness of the crime. See Gall, 552 U.S. at 48 (noting that while custodial sentences are qualitatively more severe than probationary sentences of equivalent terms, offenders on probation are nonetheless subject to conditions that substantially restrict their liberty).

6

lifestyle, or to feed a gambling or drug addiction. Her ex-husband paid no child support,[3] and I did not doubt that money was an issue for her family. The gain to her on a monthly basis was relatively modest, and I had no reason to doubt that the disability determination was otherwise accurate. I also had no reason to doubt defendant's description of her relationship with the child she cared for: that she was more of a surrogate mother than a paid care provider, that her duties permitted rest breaks while the child slept, and that she received help from her own daughter.[4] The termination of defendant's benefits provided an additional punitive impact.

### III. CONCLUSION

For these reasons and those stated on the record, I placed defendant on probation for a period of five years with a condition of six months home confinement. I selected the maximum term of supervision to ensure monitoring and payment of restitution. This sentence varied from the guidelines, but modestly, just 2 levels,[5] and because it was based on the particular facts of the case discussed above, it created no unwarranted disparity. 18 U.S.C. § 3553(a)(6).

I further required defendant to make restitution to the USPS in the amount of $47,375.48 and the SSA in the amount of $44,669.60. As additional conditions of supervision, I required defendant to make regular restitution payments, provide access to her financial information, and participate in a mental health treatment program. Other terms and conditions of the

---

[3] Defendant presented evidence that her ex-husband owed her back child support exceeding $26,000.

[4] At sentencing, defendant indicated that she continued to watch the child without compensation.

[5] At offense level 10, defendant's range would have been 6-12 months, a Zone B range permitting a sentence of probation with a condition of at least 6 months home confinement.

sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 27th day of August, 2010.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge